WOLF, Judge.
In this appeal we have for review an order dismissing a complaint alleging breach of a covenant not to compete in an employment contract. We find appellant has sufficiently pled a cause of action, and we reverse.
Advance Systems Designs (ASD), appellant, is a Florida corporation which provides computer programming and system design services. In June 199’2, the Florida Department of Health and Rehabilitative Services (HRS) contracted with Deloitte and Touche (D & T) to supply computer programmers and analysts to work the Florida On-Line Recipient Integrated Data Access Systems (FLORIDA).[1] D & T entered into an oral contract with ASD to provide at least three qualified computer programmers for the FLORIDA assignment at HRS.
In April 1994, ASD made job offers to Allen Strawn, Ken Bennett, and Charles Fel-ton, appellees, for computer programming positions. The appellees signed identical employment contracts, each containing a covenant not to compete which stated,
4. Employees shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the period of 24 months following termination, for any reason, of his/her employment with employer or any subsidiary or affiliate, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus or service which it is then competitive with or similar to a product, process, apparatus or service provided by employer; provided however, that the limitation and restriction contained in this paragraph shall apply only to present and former customers of employer, no matter where located, for whom the employee, while an employee of employer, no matter where located, for whom the employee, while an employee of employer, has provided services within 24 months prior to the date of his/her termination of employment; it being further understood that employee shall during said 24 month period be permitted to engage in such proposed work or activity on behalf of any individual or entity not a present or former customer of employer, and for whom employee has not performed services while an employee of employer within 24 months prior to his/her termination of employment with employer.
(Emphasis added).
Appellant alleges at the time each appellee signed the employment contract, each appel-lee also contemporaneously signed letters conveying the job offers which stated, “This position is for the Florida Department of HRS working with Deloitte [and] Touche in Tallahassee, Florida....”
In March 1995, HRS terminated its contractual relationship with D & T regarding the FLORIDA project and subsequently awarded an emergency contract to Unisys. Appellees each submitted a resignation letter to ASD effective March 31, 1995. Subsequently, appellees each gained employment with different computer companies.[2] Each of these companies, in turn, had a contract with Unisys.
After having a second-amended complaint dismissed, ASD filed a third-amended complaint against appellees based on a breach of the noncompetition clause. The complaint alleged facts describing ASD’s past and current business relationships with HRS. The complaint also alleged the following:
47. As contemplated by paragraph 4 of each Agreement, HRS is a present and a *415 former “customer” of ASD, because, without limitation:
(a) HRS was the direct and exclusive beneficiary of the computer programming and system design services ASD provided through Strawn, Bennett and Felton during their term of employment with ASD;
(b) HRS exercised direct supervisory and day to day control over Strawn, Bennett and Felton such that HRS was the real party in interest to the transactions át issue. While Deloitte and Touche was also an ASD customer as contemplated by paragraph 4 of the respective Agreements, Deloitte and Touche’s role was passive and was limited to ministerial approval of time sheets and overtime and leave requests and related administrative tasks. Deloitte and Touche also acted as a mere conduit whereby HRS paid Deloitte and Touche for the services ASD was providing HRS through Strawn, Bennett and Felton. De-loitte and Touche in turn merely remitted payment for the same services to ASD.
(c) ASD and HRS have had, and continue to have, contractual dealings separate and apart from the contracts at issue in this case, and ASD expects such business dealings to continue into the foreseeable future, such that the loss to ASD of business related to HRS’ computer systems would be a financial detriment to ASD; and
(d) ASD, because of its past and current business relationships with HRS and the true nature of the transactions at issue, considered HRS to be its customer within the meaning of paragraph 4 of each Agreement.
48. On or about March 31, 1995, HRS terminated its contractual relationship with Deloitte & Touche and awarded emergency contract to Unisys. Approximately 60% of Deloitte and Touche’s computer programmers and support staff accordingly left HRS’ premises, thus creating a severe shortfall in the number of experienced computer programmers needed to maintain and upgrade the FLORIDA system.
50. Upon learning of the award of the HRS emergency contract to Unisys and the resulting critical need for HRS to retain experienced computer professionals, Strawn and Bennett approached ASD’s officers in March, 1995 and demanded substantial increases in salary, or they would resign and work for ASD’s competitors in the FLORIDA system.
52. Felton also indicated that he was dissatisfied with his pay at ASD, although he did not demand a specific pay increase.
55. Following their respective resignations from ADS, and notwithstanding the provisions of paragraph 4 of each of their respective Agreements, Strawn, Bennett and Felton have continued to work, without interruption, at their same work stations at HRS’s offices located at the North-wood Mall in Tallahassee, Florida.
56. Strawn, Bennett and Felton have also continued to provide the same technical and computer programming services for the benefit of HRS’s FLORIDA system that Strawn, Bennett and Felton provided while they were ADS employees.
57. ADS remains in the business of providing computer programming and technical services similar or identical to the services which Strawn, Bennett and Felton are currently providing at HRS. ADS desires and is able to continue to supply such services for HRS’ benefit.
58. Strawn, Bennett and Felton have failed and refused to cease and desist providing such services to HRS and its FLORIDA system following proper demand to do so from ASD.
The trial court dismissed ASD’s complaint because it found HRS was not a customer for purposes of the noncompetition clause. Under the facts pled above, however, the trier of fact could find that HRS is a former customer as described in the clause and to which appellees did and still do provide services. We conclude, therefore, the trial court erred in dismissing appellant’s complaint.
REVERSE.
JOANOS and VAN NORTWICK, JJ., concur.

. FLORIDA is a computer system which provides financial accounting, notification of changes in benefits, and the issuance of benefit checks to applicants and recipients under child-support enforcement, AFDC, food stamps, and Medicaid programs.

. Felton was employed by Syntel, Inc.; Bennett was employed by Lenco Computer Company; and Strawn was employed by Metro Information Systems.